## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 7919 | **DATE** | 11/27/2012 |
| **CASE TITLE** | *Zersen v. PT Insurance Group, et al.* | | |

**DOCKET ENTRY TEXT**

For the reasons stated herein, Plaintiff's motion for summary judgment [51-1] is denied. Underwriter's motion for summary judgment [45-1] is granted as to the TCPA claim. The Court declines to exercise supplemental jurisdiction over the IFDBPA claim and remands the case with the remaining claim to the Circuit Court of Cook County. The case is terminated and the clerk is directed to enter a Rule 58 judgment in Underwriters' favor on the TCPA claim.

■[ For further details see text below.]

Docketing to mail notices.

### STATEMENT

Jerry Zersen filed the instant suit after he received an unsolicited fax on June 5, 2006. Both Zersen and defendant American Consumers Insurance Group, Ltd., n/k/a Underwriters Insurance Group, Ltd. ("Underwriters") have filed motions for summary judgment. For the reasons stated herein, the plaintiff's motion is denied and Underwriters' motion is granted as to the TCPA claim.

**I.     Facts**

On April 7, 2009, Zersen filed his original complaint against PT Insurance Group, LLC d/b/a Performance Trust Insurance Group ("PT Insurance") in the Circuit Court of Cook County alleging causes of action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Illinois Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 ("IFDBPA"), and common law conversion. (Def.'s LR 56.1(a) Stmt., Dkt. # 47, at ¶ 6.) The original complaint names only PT Insurance as a defendant. (*Id*. ¶ 2.) On January 6, 2011, Zersen filed his first amended complaint ("FAC"), which added Underwriters as a defendant, but otherwise alleged the same causes of action. (*Id*. ¶ 8.) After two more amendments by Plaintiff, newly-added defendant Barry Powitz, who has since been voluntarily dismissed from the case, filed a notice of removal on November 7, 2011. (Notice Removal, Dkt. # 1.) The conversion claim has been dismissed (Dkt. # 21), so only the TCPA and IFDBPA claims remain pending. In addition, PT Insurance has filed for bankruptcy (Dkt. #18), so the claims against it are stayed. Moreover, while Zersen initially filed this as a class action, he now seeks only individual relief. (Pl.'s Comb. Resp. Mot. Summ. J., Dkt. # 51, n.1.)

Powitz and Michael Mikulka each have fifty percent (50%) ownership in Underwriters and Powitz was also an insurance manager for PT Insurance Group from 2004 to 2008. (Pl.'s LR 56.1(a) Stmt. Fact, ¶¶ 5-7.) Both Underwriters and PT Insurance Group were at times located at 1301 South Wolf Road, Prospect Heights, Illinois. (*Id*. ¶ 8.) On June 5, 2006, the date the fax was sent, Underwriters and PT Insurance were

**STATEMENT**

insured under the same insurance policy by Hartford Casualty Insurance Company.  (*Id*. ¶ 13.)  Additionally, both Powitz and Mikulka had check-signing authority for Underwriters. (*Id*. ¶¶ 9, 10.)

From August 2005 until September 2007, Caroline Abraham did business as Business to Business Solutions ("B2B").  (*Id*. ¶ 14.)  She identified targets from a database she had purchased from InfoUSA and, after receiving a customer's approval for an advertisement, caused the document to be faxed to the targets.  (*Id*. ¶¶ 15, 16.)  Abraham did not contact the companies on the list she had obtained from the InfoUSA database to request their permission to send fax advertisements.  (*Id*. ¶ 17.)

In 2006, Powitz, while employed by PT Insurance and half owner of Underwriters, contacted B2B to send advertisements via fax that advertised Performance Trust, which is the doing business as name for PT Insurance.  (*Id*. ¶ 18.)  Powitz sent B2B a "marketing kit" for B2B to use in creating the advertisement.  (*Id*. ¶ 19.)  The final advertisement that was approved advertised "Performance Trust" and identified its address as 1301 Wolf Road, Suite 202, Prospect Heights, Illinois, 60070.  (*Id*. ¶ 20.)

Although Underwriters denies that B2B physically transmitted any fax advertisements and asserts that a company in Romania called Macaw sent the faxes using B2B's phone lines, Underwriters sent B2B a check for $279.20 dated May 24, 2006.  (Pl.'s LR 56.1(a) Stmt. Fact, ¶ 21; Def.'s LR 56.1(b)(3) Resp., ¶ 21.)  The address for Underwriters on the May 24, 2006 check is the same address listed on the approved fax that B2B caused to be transmitted.  (Pl.'s LR 56.1(a) Stmt. Fact ¶ 22.)

On June 5, 2006, Zersen received the fax that was paid for by Underwriters at the fax number (847) 356-5589.  (Pl.'s LR 56.1(a) Stmt. Fact, ¶ 24.)  Prior to receiving this fax, Zersen had never done any business with Powitz, PT Insurance Group, or Underwriters. (*Id*. ¶ 28.)

**II.     Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial.  *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

**III.    Analysis**

A.    <u>Are the IFDBPA and TCPA claims time-barred</u>?

Underwriters first contends that the IFDBPA and TCPA claims are time-barred.  The statute of limitations for the IFDBPA is three years, 815 Ill. Comp. Stat. 505/10a(e), while the longest statute of limitations under the TCPA is four years, 28 U.S.C. § 1658.  The fax was sent on June 5, 2006, but Underwriters was not sued until January 10, 2011.  Thus, upon initial review, the IFDBPA and TCPA claims against Underwriters are time-barred.  However, Plaintiff contends that the IFDBPA and TCPA claims relate back to the filing of the initial complaint.

The Court, however, need not address this issue because even assuming that the claims relate back, the TCPA claim fails on the merits and the Court declines to exercise supplemental jurisdiction over the

| **STATEMENT** |
|---|

IFDBPA claim.

    B.    <u>TCPA</u>

    The TCPA was created to impose limitations on "junk-fax transmissions." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). With certain exceptions, the TCPA makes it unlawful to "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). "[T]o prevail under the TCPA, plaintiffs must show that (1) defendant used a telephone facsimile machine, computer or other device to send one or more faxes to plaintiffs' facsimile machines; (2) the faxes sent contained material advertising the commercial availability or quality of any property, goods, or services, and (3) plaintiffs did not give prior express invitation or permission for defendant to send the faxes." *Hinman v. M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1158 (N.D. Ill. 2009). If found to have violated the TCPA, the defendant must pay "statutory damages of $500 per fax, which can be trebled if the court finds that the violation was willful or knowing." *Creative Montessori Learning Ctrs v. Ashford Gear LLC*, 662 F.3d 913, 914 (7th Cir. 2011).

    While Underwriters admits that Powitz, who was half-owner of Underwriters, contacted B2B to send faxes advertising Performance Trust, and that it paid B2B for the fax transmission, it contends that it cannot be liable since the TCPA only imposes liability on entities that send faxes and it did not send the fax.

    In support of its position that Underwriters can be held liable under the TCPA, Plaintiff points to a ruling by the Federal Communications Commission regarding fax transmissions under the TCPA, in which the FCC stated that "a fax broadcaster also will be liable for an unsolicited fax if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, 2006 WL 901720, at *12 (April 6, 2006) ("2006 TCPA Order"). Underwriters, however, is not a fax broadcaster and thus fails to fall under the express language of the 2006 TCPA Order. While Plaintiff argues that the FCC intended to include *any party* in this "high degree of involvement" language, in the absence of express language to that effect, the Court declines Plaintiff's invitation to expand the FCC's ruling as he suggests.

    Even assuming, however, that the "high degree of involvement" standard applies here, Plaintiff has failed to demonstrate the standard has been met. As an initial matter, Plaintiff cites to no authority explaining what conduct constitutes a "high degree of involvement." Moreover, the facts do not support a finding of a high degree of involvement assuming a plain meaning definition. Plaintiff notes that Underwriters' half-owner, Powitz, negotiated the fax deal with B2B and approved the fax to be sent on behalf of Performance Trust. But Plaintiff fails to show that Powitz was acting for Underwriters when he negotiated the fax transmission deal or approved the fax. Indeed, Underwriters asserts in its statement of undisputed facts that "[a]ny work that Powitz . . . performed during the period [he was] employed by PT Insurance Group was performed only on behalf of PT Insurance Group in [his] capacity as [an] employee[] of PT Insurance Group." (Def.'s LR 56.1(a) Stmt. Fact, Dkt. # 47, ¶ 33.) While Plaintiff challenges the characterization of "in his capacity as an employee" as a legal conclusion (Pl.'s Resp. Def.'s LR 56.1(a) Stmt. Fact, Dkt. # 53, ¶ 33.), he fails to point to any record evidence contradicting the statement that the work Powitz while employed by PT Insurance Group was on behalf of PT Insurance Group only. Moreover, although it is undisputed that the check that paid for the fax transmission came from an Underwriters' bank account, Plaintiff fails to demonstrate how this one fact establishes a "high degree of involvement" by Underwriters. *Cf. Thomas v. Taco Bell Corp.*, — F. Supp. 2d —, 2012 WL 3047351, at *6 (C.D. Cal. June 25, 2012) (holding a franchisor not vicariously liable under the TCPA for text messages made by an association of store owners because "knowledge, approval, and fund administration do not amount to controlling the manner and

**STATEMENT**

means of the text message campaign").

Nor does Plaintiff make any argument or point to any evidence attempting to establish liability under agency principles or pursuant to a piercing the corporate veil or joint enterprise theory. Accordingly, as to the TCPA claim, Plaintiff's motion for summary judgment is denied and Underwriters' motion for summary judgment on the merits of the claim is granted.

### C. IFDBPA

Because the Court has granted judgment on the TCPA claim, it declines to exercise supplemental jurisdiction over the IFDBPA claim. 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

Accordingly, Plaintiff's motion for summary judgment [51-1] is denied. Underwriter's motion for summary judgment [45-1] as to the TCPA claim is granted. The Court declines to exercise supplemental jurisdiction over the IFDBPA claim and remands the case with the remaining claim to the Circuit Court of Cook County. The case is terminated and the clerk is directed to enter a Rule 58 judgment in Underwriters' favor on the TCPA claim.